```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                        NORTHERN DIVISION


MICAH RUDISILL, # 48233-019                           PETITIONER

VS.                          CIVIL ACTION NO. 3:13-cv-834(DCB)(MTP)

M. MARTIN, Warden                                     RESPONDENT
```

MEMORANDUM OPINION AND ORDER

This cause is before the Court on Micah Rudisill's pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his 1998 conviction and 1999 sentence in the District Court for the District of Arizona. Ordinarily, § 2241 is used to challenge the manner in which a sentence is executed, and is filed with the court where the prisoner is incarcerated; § 2255 is used to collaterally attack the legality of the petitioner's conviction or sentence, and is filed with the court where the prisoner was convicted and sentenced. See Warren v. Miles, 230 F.3d 688, 694 (5th Cir. 2000); Cox v. Warden, Fed. Det. Ctr., 911 F.2d 1111, 1113 (5th Cir. 1990). However, § 2241 may also be used by a federal prisoner to challenge the legality of his conviction or sentence, but only if he can satisfy the mandates of § 2255's "savings clause." See Reyes-Requena v. United States, 243 F.3d 893, 901 (5th Cir. 2001).

A prisoner may use § 2241 as the vehicle for attacking his conviction or sentence if it appears that the remedy by § 2255 motion "is inadequate or ineffective to test the legality of his

detention." 28 U.S.C. § 2255. A § 2241 petition is not a substitute for a motion to vacate sentence pursuant to § 2255, and the burden of coming forward with evidence to show the inadequacy or ineffectiveness of a motion under § 2255 rests squarely on the petitioner. Jeffers v. Chandler, 253 F.3d 827 (5th Cir. 2001). A prior unsuccessful § 2255 motion, or the inability to meet the AEDPA's "second or successive" requirement, does not make § 2255 inadequate or ineffective. Tolliver v. Dobre, 211 F.3d 876, 877 (5th Cir. 2000).

The Fifth Circuit has set forth three requisites a petitioner must show in order to meet his burden. To establish that a § 2255 motion is inadequate or ineffective, the petitioner must show that: (1) the petition raises a claim that is based on a retroactively applicable Supreme Court decision; (2) the claim was previously foreclosed by circuit law at the time when it should have been raised in the petitioner's trial, appeal or first motion for post-conviction relief; and (3) the retroactively applicable decision establishes that the petitioner may have been convicted of a nonexistent offense. Garland v. Roy, 615 F.3d 391, 394 (5th Cir. 2010); Reyes-Requena, 243 F.3d at 904.

Following a 17-week trial in 1998 in the District Court for the District of Arizona, Rudisill and five co-defendants were found guilty of conspiracy to commit fraud, conspiracy to commit money laundering, mail fraud, and wire fraud for their involvement in a

fraudulent telemarketing scheme. Rudisill and one of his co-defendants were also found guilty of promotional money laundering. Rudisill was convicted of multiple counts of promotional money laundering and conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(h); multiple counts of conspiracy, in violation of 18 U.S.C. § 371; mail fraud, in violation of 18 U.S.C. § 1341; and wire fraud, in violation of 18 U.S.C. § 1343. The telemarketing scheme from which the convictions arose was a "fraudulent prize promotion scheme" in which Rudisill and others convinced customers to purchase overpriced promotional materials and advertising products as a condition to receiving "prizes" they had purportedly won. Customers were also told that they had won valuable "bonus points" which could be exchanged for certain merchandise (which was either never sent or was far less valuable than represented). After the initial payments, customers were deceived into paying more money into the scheme by being told that the payments were necessary to maintain eligibility, increase the size of the award, or avoid disqualification.

   Rudisill was sentenced to a term of 210 months, to be followed by three years of supervised release. He was also ordered to pay restitution of approximately $8.7 million and a special assessment of $4,100.00. United States v. Rudisill, 2005 WL 4867393 *1 (D. Ariz. Aug. 4, 2005); Petitioner's Brief, docket entry 23-1, p. 11. His sentence was comprised of the following: 210 months for the

conspiracy to commit money laundering count and the money laundering counts, to be served concurrently; 60 months on each of the counts for conspiracy to commit mail and wire fraud and use of a fictitious name, mail fraud, and wire fraud, to be served concurrently, and to be served concurrently with the sentence previously imposed. See Petitioner's Brief, p. 11; Respondent's Brief in Response, docket entry 31, p. 1.  In addition, the 210-month sentence was to be served consecutively to a 210-month sentence which had been imposed on Rudisill in the District Court for the Northern District of Alabama, United States v. Rudisill, No. CR 97-B-266-S.  See Petitioner's Brief, p. 11; Respondent's Brief, pp. 1-2.

Rudisill appealed his judgment of conviction and sentence from the District Court of Arizona to the Ninth Circuit Court of Appeals, which affirmed the District Court on July 12, 2002.  He then filed a motion to vacate, set aside or correct his sentence pursuant to § 2255 on grounds of (1) ineffective assistance of counsel, (2) failure to charge a cognizable offense; and (3) illegal sentencing under Blakely v. Washington, 542 U.S. 296 (2004).  The motion was denied on November 1, 2006.

Rudisill then filed his petition for writ of habeas corpus under § 2241 in this District Court, seeking to have his sentence on his money laundering and conspiracy to commit money laundering convictions reduced or vacated.  The petitioner argues that he was

actually innocent of the money laundering convictions, based on the Supreme Court's holding in United States v. Santos, 553 U.S. 507 (2008)(hereafter Santos). In his § 2241 petition, Rudisill argues that Santos modifies the definition of money laundering under 18 U.S.C. § 1956(a)(1)(A)(i), holding that the term "proceeds" refers to "profits" and not "receipts." Rudisill argues that he was convicted of money laundering "based on payment of the expenses of the underlying criminal activity," which are not funds that qualify as "profits" under the money laundering statute, as interpreted by the Supreme Court in Santos.

In a previous Memorandum Opinion and Order (docket entry 35), the Court addressed the "savings clause" requirements. The first requirement is that the petition raises a claim that is based on a retroactively applicable Supreme Court decision. In Garland, the Fifth Circuit found that "new decisions interpreting federal statutes that substantively define criminal offenses automatically apply retroactively and Santos is an exemplar of such a decision." Garland, 615 F.3d at 396. This satisfies the first requisite under the savings clause. This Court has been instructed by the Fifth Circuit to apply its Garland decision to this case. Rudisill v. Pearson, 442 Fed.Appx. 928 (5th Cir. 2011).

The second requirement under the "savings clause" is that the petitioner's claim was previously foreclosed by circuit law at the time when it should have been raised in the petitioner's trial,

appeal or first motion for post-conviction relief.  In <u>Garland</u>, the Fifth Circuit noted that "foreclosed" means "'excluded' by prior controlling case law," 615 F.3d at 397, and further explained:

> We have consistently held that if an argument falls within the scope of, and is excluded by, a prior holding of a controlling case, it is foreclosed by that case. The court need not have specifically considered and rejected the exact claim for it to be foreclosed, as long as the breadth of a prior holding was meant to encompass and preclude the argument.

<u>Id</u>. at 398.  The Fifth Circuit found that Garland's claim had been previously foreclosed by Fifth Circuit case law.  <u>Id</u>.  Garland had been convicted and sentenced in the Northern District of Texas (<u>see</u> <u>United States v. Garland</u>, 44 Fed.Appx. 651 (5th Cir. 2002)), and filed his § 2241 petition in the Eastern District of Texas (where he was incarcerated)(see <u>Garland v. Roy</u>, 615 F.3d at 392).  Thus, the "prior controlling case law" was that of the Fifth Circuit.

In this case, the Court is deciding Rudisill's claim in his § 2241 petition under Fifth Circuit law.  However, in deciding whether Rudisill's claim was previously foreclosed at the time when it should have been raised in his trial, on appeal, or in his first § 2255 motion, the "prior controlling case law" is that of the Ninth Circuit, where Rudisill was convicted.  <u>See</u> <u>Bell v. Keffer</u>, 2011 WL 825731 *3 (N.D. Tex. March 3, 2011)(in deciding whether a claim was previously foreclosed by circuit law, "the circuit law with which the court is concerned is the law of the ... [c]ircuit where petitioner was tried, her appeal was taken, and her first §

6

2255 motion was filed.").

At the time of Rudisill's conviction, settled law in the Ninth Circuit established the legality of his conviction. In addition, Santos was decided after the petitioner's direct appeal and first § 2255 motion were denied. Therefore, Rudisill's claim was previously foreclosed by circuit law at the time when it ordinarily would have been raised in his trial, appeal and first motion for post-conviction relief, satisfying the second requisite.

The third requirement under the "savings clause" is that the retroactively applicable decision establishes that the petitioner may have been convicted of a nonexistent offense. In his brief in support of his petition, Rudisill argues that Santos retroactively decriminalizes the conduct for which he was convicted under the money laundering statute (specifically 18 U.S.C. §§ 1956(a)(1)(A)(i) and (h)). According to the petitioner, his conviction was based on financial transactions which constituted payment of the expenses of the underlying illegal activities, whereas, under Santos, "a criminal who enters into a transaction paying the expenses of his illegal activity cannot possibly violate the money-laundering statute, because by definition profits consist of what remains after expenses are paid." Petitioner's Memorandum Brief, p. 10, quoting Santos, 553 U.S. at 517.

In Garland, the defendant was convicted of 52 counts of money-laundering which were predicated upon 62 counts of mail fraud and

one count of securities fraud.  Id. at 394.  In applying Santos, the Fifth Circuit found that:

> in light of the statute, indictment, and jury instructions of this case, it appears that (1) the Government did not prove or attempt to show that Garland engaged in money laundering with "proceeds," narrowly defined as "profits" rather than as "gross receipts"; (2) the same "transaction" may have been used to prove both the underlying unlawful activity and the money-laundering charges; and therefore (3) Garland's convictions for mail and securities fraud potentially "merged" with his money-laundering conviction.

Id. at 404.

The Fifth Circuit thus concluded that Garland may have been convicted of a "non-existent offense."  Id.  Garland therefore satisfied the third prong of the Fifth Circuit's test for assessing whether a petitioner may proceed under § 2241 by way of § 2255's savings clause.  Id.  Having determined that Garland satisfied all three of the Reyes-Requena requisites, the Fifth Circuit reversed the district court's dismissal of Garland's § 2241 petition and remanded for further proceedings.  Id.

The Court notes that Congress amended the money laundering statutes in 2009 to define "proceeds" as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity."  18 U.S.C. §§ 1956(c)(9), 1957(f)(2)-(3) (2009).  The amendments effectively overruled Santos, but "[t]he ex post facto clause prohibits legislatures from retroactively altering the definition of a crime or increasing the punishment for it."  United

States v. Sahabir, 880 F.Supp.2d 377, 380 n.2 (N.D. N.Y. 2012)(citing Collins v. Young, 497 U.S. 37, 43 (1990)). Thus, Rudisill's challenge to his sentence based on Santos is not governed by the amendments to the money laundering statute since the acts for which Rudisill was convicted and sentenced occurred before the amendments were enacted. See id.

The Court also notes that in 2002 Congress increased the maximum sentence for mail and wire fraud from five years to twenty years (Sarbanes-Oxley Act of 2002), but this too has no effect on Rudisill's sentence.

In this case, Rudisill relies on Santos to claim that the term "proceeds" in his case was wrongfully applied because the trial evidence showed that his payments were "gross receipts," not "profits." Specifically, he argues that he "has been convicted of a nonexistent offense because his convictions for money laundering 'merged' with the scheme to defraud and his fraud convictions, and the Government did not prove or attempt to show that Rudisill engaged in money laundering with 'proceeds,' narrowly defined as 'profits' rather than 'gross receipts.'" Petitioner's Supplemental Memorandum Brief, p. 16 (docket entry 23-1). Rudisill further argues:

> The money laundering convictions for counts 38 and 47-57 in the underlying criminal case (CR97-237-6-PHX-ROS) merged with the scheme to defraud at the heart of Mr. Rudisill's convictions for counts 1, 2, 5, 8-20, and 21-33, in that a review of the record establishes that the money laundering convictions were based on transactions

> paying expenses central to the scheme to defraud, with the gross receipts of the same. This showing is sufficient to establish that the "merger problem" which Justice Stevens characterized as a "perverse result" - triggering the requirement that the Government prove that the "proceeds" were "profits" - is present in Mr. Rudisill's case.

<u>Id</u>. at p. 20. Furthermore, the petitioner asserts that the

> ... indictment and jury instructions ... establish that the Government neither proved nor attempted to show that the "proceeds" involved in the money laundering transactions were "profits" of the underlying scheme to defraud. To the contrary, in describing the method and means of the money laundering conspiracy, the court instructed the jury that "[c]hecks were written against those accounts and used to pay the expenses of carrying out the business of AEA." ... The substantive counts incorporate this method and means paragraph of the conspiracy count and describe necessary expenses of the scheme. ... Since the offenses merged and the Government did not prove or attempt to show that the "proceeds" involved in the money laundering transactions were "profits," Mr. Rudisill was convicted of a nonexistent offense, satisfying the third <u>Reyes-Requena</u> factor.

<u>Id</u>. at p. 30-31 (citations omitted).

A petitioner such as Rudisill, seeking to avail himself of the "savings clause" exception of § 2255, "bears the burden of presenting a credible claim of actual innocence." <u>Spearman v. Wilson</u>, 469 Fed.Appx. 435, 437 (6th Cir. 2012). A claim of actual innocence (<u>i.e.</u> "factual innocence") for purposes of the "savings clause" is tested by the standard articulated by the United States Supreme Court in <u>Bousley v. United States</u>, 523 U.S. 614 (1998): "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." <u>Id</u>. at 623. The

petitioner bears the burden of proof on this issue by a preponderance of the evidence. Furthermore, he must show the evidence against him was so weak that "no reasonable juror" would have convicted him. Lorentsen v. Hood, 223 F.3d 950, 953 (9th Cir. 2000).

The First Superseding Indictment in Rudisill's case charges that Rudisill and his co-defendants, "knowing that the property involved in financial transactions represented the proceeds of some form of unlawful activity, knowingly conducted financial transactions ... which involved the proceeds of specified unlawful activity, namely mail and wire fraud in violation of Title 18, United States Code, Sections 1341 and 1343, with the intent to promote the carrying on of those specific unlawful activities." Superseding Indictment, pp. 15-16. Counts 47 through 57 include the following transactions, "[i]n violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i)" (Id. at p. 17):

Count 47: check dated September 30, 1996, in the amount of $1,790.00, payable to Francis Family Trust for rent.

Count 48: check dated October 9, 1996, in the amount of $18,065.00, payable to Arizona Gold Exchange for gold coins.

Count 49: check dated October 21, 1996, in the amount of $13,939.25, payable to Arizona Gold Exchange for gold coins.

Count 50: check dated October 29, 1996, in the amount of $3,580.00, payable to Gotham Marketing for customer leads.

11

Count 51: check dated December 12, 1996, in the amount of $20,044.60, payable to Arizona Gold Exchange for gold coins.

Count 52: check dated September 1, 1996, in the amount of $3,667.00, payable to Lewis & Hall for rent.

Count 53: check dated September 3, 1996, in the amount of $7,014.00, payable to Society of Stewards.

Count 54: check dated October 9, 1996, in the amount of $6,261.00, payable to Society of Stewards.

Count 55: check dated January 31, 1997, in the amount of $24,950.00, payable to Now, Inc. for payroll.

Count 56: check dated January 23, 1997, in the amount of $25,000.00, payable to Now, Inc. for payroll.

Count 57: check dated April 3, 1997, in the amount of $15,775.00, payable to Now, Inc. for payroll.

Id. at pp. 16-17.

Section 1956(a)(1)(A)(i)(promotional money laundering) provides that a person is guilty of money laundering if he or she

> knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity -
>
> (A)
>
> (i) with the intent to promote the carrying on of specified unlawful activity; ...

18 U.S.C. § 1956(a)(1)(A)(i).

In addition, section 1956(h) provides that "[a]ny person who conspires to commit any offense defined in this section ... shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." 18 U.S.C. § 1956(h).

In its prior Memorandum Opinion and Order (docket entry 35), this Court addressed whether the facts of Rudisill's criminal case would support a conviction under Santos. The Court found that Rudisill satisfied the actual innocence prong as to Counts 47-52 and 55-57. These counts involved payments for rent, gold coins, customer leads, and payroll. Such payments are ordinary business expenses of the fraudulent scheme and do not represent profits.

This Court also found, however, that Counts 53 and 54, representing donations to a charity, were more problematic. The Court explained:

> It seems questionable that such donations would be ordinary business expenses. They may, instead, be payments out of profits which in turn promoted the fraud scheme. If that is the case, Rudisill would not be able to satisfy the actual innocence prong as to these two counts, nor to the conspiracy to commit money laundering count, since the principal applicable to the substantive counts applies to the conspiracy count as well.
>
> This issue turns on the facts as developed in the trial court. Based on the scant factual record before this Court, the Court cannot make a meaningful determination of the issue.

Docket Entry 35, page 29.

In a subsequent Memorandum Opinion and Order (docket entry

13

40), the Court referred this case to Magistrate Judge Parker so that the parties could conduct discovery and submit supplemental briefing. The Court advised the parties:

> The petitioner must demonstrate his actual innocence as to Counts 53, 54 and 38 in order to obtain relief as to those counts. To establish that he is actually innocent, Rudisill "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623 (1998). When evaluating the petitioner's claim of actual innocence, the Court must consider all of the available evidence. Id. at 623-24 ("It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency. In other words, the Government is not limited to the existing record to rebut any showing that petitioner might make. Rather, ... the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy and would not normally have been offered before our decision in Bailey [v. United States, 516 U.S. 137 (1995)].")

Docket Entry 40, pages 7-8.

Following discovery, the Respondent filed a Supplemental Responsive Brief, which includes the following:

> The Respondent has learned from the prosecuting district that all of the evidence in this case has been destroyed given the age of the case. The trial transcript, however, is available. The trial transcript covers 44 volumes and over 7700 pages. Respondent has requested but has not yet received the portion of the transcript that specifically related to the checks at issue. It is otherwise difficult to tell what portions of the transcript would be relevant to the Court's inquiry. Respondent has been able to obtain a copy of the Presentence Report (PSR), which can be provided to the Court in camera.
>
> The PSR reveals that the Society of Stewards, the entity to which the checks related to counts 53 and 54 were written, was a fraudulent charity run by Rudisill's

14

> father, Tim Rudisill (both Rudisill and his father were convicted of a matter in the North[ern] District of Alabama related to the operation of the Society of Stewards). As a part of the scheme for which Rudisill and his co-defendants were convicted, the solicitors would tell the customers (victims of the fraud) that any excess promotional materials and/or money would be donated to Society of Stewards. The presentence report provides that it is unclear that the money actually went to Society of Stewards.
>
> Based on this information, it is difficult to discern whether the counts at issue here would present a merger problem. Inasmuch as it was a part of the scheme to defraud to pledge to the victims that excess money would be given to Society of Stewards, it is likely that such is subsumed in the operation of the scheme and would constitute a merger problem. However, without more information, it is difficult to make this determination. When Respondent receives the transcript portion he has requested, it will be filed with the Court and Respondent will supplement this brief should additional information shed light on this issue.

Docket Entry 45, pages 1-2.

The Petitioner shows that despite the PSR containing allegations (1) that the Society of Stewards was a "fraudulent charity," and (2) that "it is unclear that the money actually went to [the] Society of Stewards," the presiding judge at Rudisill's trial and sentencing found that the Society of Stewards was a legitimate charitable organization that was paid at least $167,000 by Rudisill's company, American Eagle Advertising. <u>See</u> Petitioner's Exhibit B, p. 7 (Docket Entry 961 in <u>U.S. v. Rudisill</u>, Crim. Case No. CR97-237-PHX-ROS (D. Ariz.)(District Judge Roslyn O. Silver)("It is clear that there was at least $167,000 that was paid to the Society of Stewards. I cannot say by a preponderance of the

15

evidence that it was not a charitable organization.").

Furthermore, the evidence presented at trial and at sentencing showed that donations to the Society of Stewards were part of the scheme to defraud the victims, and constituted "proceeds," not "profits." As the Respondent admits, "[i]nasmuch as it was a part of the scheme to defraud to pledge to the victims that excess money would be given to Society of Stewards, it is likely that such is subsumed in the operation of the scheme and would constitute a merger problem." Docket Entry 45, page 2. The Fifth Circuit noted in Garland that a merger occurs "when a defendant could be punished for the same 'transaction' under the money-laundering statute as well as under the statute criminalizing the 'specified unlawful activity' underlying the money-laundering charge." 615 F.3d at 402. A "merger problem" therefore exists "if 'proceeds' were to be defined as 'receipts' rather than 'profits,'" and the money-laundering charge could be based on the same "transaction" as the "predicate crime." Id.

The Respondent never supplemented his Supplemental Responsive Brief with additional information. In any event, the Court finds that Rudisill has shown that he satisfies the criteria set forth in Reyes-Requena for a federal prisoner to be granted relief under § 2241 inasmuch as he is "actually innocent" of the money laundering counts, and that he is entitled to the relief requested. Specifically, he shows that, based on Santos, he is actually

innocent of the money laundering convictions, counts 38 and 47-57. Rudisill's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 shall therefore be granted.

The Court notes that both the Fifth Circuit Court of Appeals and the Ninth Circuit Court of Appeals have adopted the "aggregate package" approach to resentencing.  United States v. Campbell, 106 F.3d 64, 68 (5th Cir. 1997); United States v. Bay, 820 F.2d 1511, 1513 (9th Cir. 1987).  Under this approach, a defendant who attacks any part of his sentence necessarily attacks the whole sentence. See United States v. Benbrook, 119 F.3d 338, 340 (5th Cir. 1997); Bay, 820 F.2d at 1513-14.  By attacking part of his sentence, i.e. the money laundering counts, Rudisill has no legitimate expectation of finality in his sentence and opens the entire sentence to review.  Benbrook, 119 F.3d at 340.  Thus, for example, a sentencing enhancement applied exclusively to the vacated counts could be re-applied to the remaining counts.  See, e.g., Smith v. Pratt, 2001 WL 435066, *7 (N.D. Tex. April 20, 2001).

Since Rudisill was sentenced in the United States District Court for the District of Arizona, this civil action shall be transferred to the United States District Court for the District of Arizona for resentencing.  See Assed v. Tombone, 2005 WL 1398716, *3 (E.D. Tex. June 3, 2005); Garland v. Roy, 2011 WL 4357190 (E.D. Tex. Sept. 15, 2011).

Accordingly,

IT IS HEREBY ORDERED that Petitioner Micah Rudisill's <u>pro se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his 1998 conviction and 1999 sentence on counts 38 and 47-57 in the District Court for the District of Arizona is GRANTED, and the convictions and sentence pertaining to those counts are VACATED;

FURTHER ORDERED that the Clerk of Court is directed to transfer this civil action to the United States District Court for the District of Arizona for resentencing on the remaining counts.

A Final Judgment in accordance with this Memorandum Opinion and Order shall be entered of even date herewith.

SO ORDERED, this the 31st day of March, 2015.

<u>/s/ David Bramlette</u>
UNITED STATES DISTRICT JUDGE